**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


FENCOURT REINSURANCE COMPANY, LTD.     :     CIVIL ACTION
    v.     :
             :
ITT INDUSTRIES, INC.     :     NO. 06-4786


**MEMORANDUM RE: ARBITRATION**

Baylson, J.     June 20, 2008

**I.     Introduction**

    The issue presented is whether this suit, filed by Plaintiff Fencourt Reinsurance
Company, Ltd. ("Fencourt" or "Plaintiff"), should be dismissed or stayed pending the resolution
of arbitration proceedings.  According to Fencourt's Amended Complaint,[1]  Defendant ITT
Industries, Inc. ("ITTI" or "Defendant"), has breached an agreement to indemnify Fencourt for its
reinsurance obligations, which are worth a total of approximately $85.5 million.  Defendant
asserts that an arbitration clause in an agreement governing the relationship between Fencourt
and ITTI controls.  Fencourt asserts, _inter alia_, that because it was not a signatory to the
arbitration agreement, it cannot be forced to arbitrate and should be allowed to proceed with its
claim in this Court.  The Court will order a stay pending Arbitration.

---

[1]An Amended Complaint was filed on May 2, 2008 shortly before the Court held oral
argument on May 21, 2008.  Although the parties had completed substantial briefing on the
issues presented pursuant to the original Complaint, both sides stipulated that the previously filed
briefs would be considered as applicable to the Amended Complaint on the issue of whether the
arbitration provision controls.  _See_ Doc. No. 38.

II. **Factual Background**

    A. **Parties**

       According to the documents before the Court, it is undisputed that prior to 1995, Fencourt was a wholly owned subsidiary of ITT Corporation ("ITT Corp."), a publicly held company that engaged in diverse commercial activities, including industrial manufacturing, insurance and hospitality/entertainment.  In 1995, ITT Corp. split into three unaffiliated public companies:  1) the industrial businesses went to ITTI; 2) the insurance businesses went to ITT Hartford n/k/a The Hartford Financial Services Group, Inc. ("ITT Hartford"); and 3) the hospitality/entertainment businesses went to ITT Destinations n/k/a Starwood Hotels & Resorts Worldwide, Inc. ("ITT Destinations").  When ITT Corp. split up, Fencourt became a wholly owned subsidiary of ITT Hartford, and it remains in that position.

       Fencourt is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  ITTI is a corporation organized under the laws of Indiana with its principal place of business in New York.[2]  According to Fencourt, ITTI succeeded to ITT Corp.'s obligations after the 1995 split; however, ITTI disputes this claim.

    B. **Summary of Amended Complaint**

       The reinsurance obligations at issue are described in the Amended Complaint.  ITT Corp. maintained a Domestic Casualty Program ("DCP") which required Fencourt to provide reinsurance to an unaffiliated entity, Century Indemnity Company (through its corporate predecessors) ("Century").  Under the DCP, Century provided insurance to ITT Corp., and ITT

---

    [2] It appears that ITTI may now be referred to as ITT Corporation.  See Def.'s Reply Br., p. 1.  Nevertheless, the Court will refer to the entity that split in 1995 as "ITT Corp." and the Defendant as "ITTI".

Corp.'s subsidiaries, including Fencourt, provided reinsurance to Century.

The Amended Complaint alleges that ITT Corp. promised to indemnify and hold Fencourt harmless for any net losses resulting from Fencourt's participation in the DCP. In December 2004, Century made a demand for $85.5 million in reinsurance from Fencourt, initiating the dispute that has culminated in this lawsuit.[3] According to Fencourt, Century's demand fell under the scope of the DCP, and ITTI succeeded to ITT Corp.'s obligations under the DCP. Fencourt therefore asked ITTI to reimburse the losses it would incur in complying with Century's demand, but ITTI refused to do so, prompting Fencourt to file the Complaint in this case.

### C.      Arbitration

ITT Corp.'s 1995 split was accomplished via a Distribution Agreement ("Distribution Agreement" or "DA") that contains a broad arbitration clause providing for mandatory arbitration of any dispute "arising out of, or in any way related to" the Distribution Agreement. ITTI has commenced arbitration in New York, pursuant to the DA's arbitration clause, against both Fencourt and ITT Hartford, seeking a declaration that ITTI is not responsible for Century's $85.5 million demand.

The dispute between Fencourt and Century, an affiliate or subsidiary of ACE, is also before an arbitration panel,  in Philadelphia. Counsel were not aware of its precise status at the Court's May 21, 2008 hearing.

---

[3] Fencourt asserts that Century's demand consisted of a $31 million bill for asbestos and silica claims against ITTI, and a requested increase in Century's Letter of Credit, to cover future such asbestos and silica claims against ITTI.

### D.      Procedural History

Fencourt filed its original Complaint on October 24, 2006.  ITTI moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that the dispute is subject to a mandatory arbitration clause, or, in the alternative, to stay the case pending arbitration.  (See Doc. No. 6.) .

The parties submitted briefs on ITTI's motion to dismiss, and subsequently filed a consent motion to stay the proceedings, which the Court granted on August 14, 2007  (See Doc. No. 10.), and placed the case in suspense.  While the case was in suspense, the parties continued with arbitration proceedings, and both parties submitted supplemental memoranda in this Court discussing the nature of those proceedings, which are addressed in greater detail below.  On February 15, 2008, at the request of both parties, this Court ordered that the case be taken out of suspense.  (See Doc. No. 30.)

On May 21, 2008, the Court held a hearing on ITTI's pending motion.  The Court required a Statement of Undisputed Facts (See Doc. No. 36) and allowed the parties to submit a Statement of Disputed Facts (See Doc. No. 35).  Counsel agreed at the hearing that the factual record under which the Court should consider the arbitration issue was the Amended Complaint, the Distribution Agreement and attachments, the correspondence and other documents that had been attached to the various pleadings.  The Plaintiff also requested that the Court consider its Statement of Disputed Facts (Doc. No. 35) as facts it believes it can prove to show that Fencourt is not bound to arbitrate, and the Court agreed to do so.

III.   **Parties' Contentions**

A.   **Fencourt**

Fencourt alleges that under the DCP, ITT Corp. would owe Fencourt reimbursement for the $85.5 million at issue, and that since ITTI is the successor to ITT Corp.'s obligation, ITTI owes Fencourt that reimbursement.  According to Fencourt, ITT Corp. assured Fencourt that Fencourt would remain financially neutral under the DCP and formed an indemnification agreement with Fencourt, the violation of which has led Fencourt to bring suit.[4]

Fencourt asserts that the DA does not supercede this indemnification agreement, and in fact, that at the time of the split, Fencourt understood and believed, based on ITT Corp.'s representations, that ITTI would reimburse Fencourt for any unreserved losses Fencourt incurred pursuant to the DCP after the 1995 split.  Fencourt disputes ITTI's contention that in connection with the 1995 split, Fencourt accepted two promissory notes, totaling $84 million plus interest, to cover future reinsurance obligations for ITT-related losses.  According to Fencourt, the 1995 promissory notes were not intended to cover future reinsurance obligations, but were actually repayments of money ITT Corp. had borrowed from Fencourt in 1993.  Fencourt has submitted copies of correspondence to support its characterization of the 1995 promissory notes.

According to Fencourt, in the Spring of 2004, ITTI and Century entered into a settlement agreement regarding the scope of coverage under the DCP for asbestos losses.  Fencourt alleges that ITTI and Century unfairly permitted Fencourt to believe that DCP liabilities would be relatively modest.  Furthermore, Fencourt states that it was not aware of the settlement agreement

---

[4]  At oral argument Fencourt asserted that the alleged contract was formed by a series of verbal agreements and course of conduct.  The Court holds, <u>infra</u>, that this pleading is sufficient under Rule 8 of the Federal Rules of Civil Procedure.

between ITTI and Century until Century made its $85.5 million demand.

Fencourt also argues that the DA's arbitration clause is irrelevant since it is suing under an indemnification agreement that pre-dates the DA and not under the DA itself.  Furthermore, according to Fencourt, it cannot be bound by the DA's arbitration clause because the arbitration clause can only bind signatories to the DA, and Fencourt was not among the signatories. Fencourt disputes that it is a third-party beneficiary to the DA, but argues that its potential third-party beneficiary status is irrelevant since it is not suing under the DA.  Similarly, Fencourt argues that the doctrine of equitable estoppel, which could render the Distribution Agreement binding on Fencourt even though Fencourt did not sign it, is immaterial since Fencourt is suing pursuant to an indemnification agreement and not the DA.

Fencourt's Amended Complaint sets forth four counts:  Breach of Contract, Unjust Enrichment, Promissory Estoppel, and Breach of Duty of Good Faith.  Fencourt seeks relief including actual and compensatory damages as well as several declarations regarding ITTI's obligations.

After ITTI commenced arbitration against both Fencourt and ITT Hartford, Fencourt submitted a supplemental memorandum in this Court arguing that ITTI had taken contradictory positions in the arbitration proceedings and in this case.  Fencourt argues that in the arbitration proceedings, ITTI takes the position that the dispute as to Fencourt's neutrality under the DCP is not arbitrable, whereas before this Court, ITTI takes the position that the same dispute must be arbitrated.

Fencourt has also submitted a Statement of Disputed Facts which describes the pre-DA indemnification agreement that Fencourt alleges ITTI has breached and states that Fencourt's

current claims are not based on the DA's indemnification provisions.  Fencourt also sets forth, in

the Statement of Disputed Facts, that it need not rely on the DA to illustrate that ITTI succeeded

to ITT Corp.'s obligations but can instead rely on a Merger Agreement dated November 1995.  In

addition, Fencourt's Statement disputes ITTI's argument that the DA extinguishes all preexisting

obligations between parties to the DA and requests that if the Court finds that the DA binds

Fencourt, it defer to the arbitrator as to whether Fencourt's claims fall within the scope of the

DA.

      **B.**       **ITTI**

ITTI contends that any reinsurance liability that Fencourt has incurred since 1995 is the

responsibility of Fencourt and/or its parent company, ITT Hartford.  ITTI argues that the 1995

Distribution Agreement expressly extinguished any pre-1995 obligations between ITT Corp.

business units, including the alleged indemnification agreement under the DCP.  ITTI argues that

the DA allocated to ITTI, ITT Hartford, and ITT Destinations all of the present and future

liabilities of ITT Corp. and its former subsidiaries, thus superceding any previous distributions of

liability.

ITTI suggests that the indemnification agreement upon which Fencourt bases the present

lawsuit was not a real agreement and points to the fact that Fencourt does not allege the existence

of a written contract binding ITT Corp. to indemnify Fencourt for reinsurance obligations, much

less a written contract binding ITTI to do so.  According to ITTI, the reinsurance obligations at

issue derive from agreements between Fencourt and Century, and Fencourt's appropriate remedy

is against Century, not ITTI.

ITTI further contends that in connection with the DA, ITTI and ITT Destinations issued

promissory notes to Fencourt in the amount of $63 million plus interest and $21 million plus interest, respectively, to fund Fencourt's anticipated future reinsurance obligations for losses incurred by ITT-related entities.  ITTI submits a letter in support of its characterization of the promissory notes.

ITTI argues that Fencourt should be required to arbitrate this dispute.  According to ITTI, Fencourt is necessarily suing under the DA, since the DA superceded all previous agreements between the parties.  Accordingly, ITTI argues that pursuant to the DA's mandatory arbitration clause and the general presumption favoring arbitration, this Court should stay these proceedings pending the arbitration.

ITTI also addresses Fencourt's status as a non-signatory to the DA.  According to ITTI, even though Fencourt did not sign the DA, the DA binds Fencourt as a third-party beneficiary and under the doctrine of equitable estoppel.  ITTI contends that Fencourt is a third-party beneficiary because under the DA's indemnification provision, ITTI and ITT Destinations indemnified "ITT Hartford and its affiliates," which includes Fencourt.  ITTI further contends that Fencourt should be estopped from contesting the application of the DA's arbitration clause because Fencourt accepted $84 million in promissory notes in connection with the DA and such notes constitute a benefit.  Also, ITTI argues that Fencourt must rely on the DA in order to establish that ITTI succeeded to ITT Corp.'s obligations, and this reliance similarly estops Fencourt from contesting the application of the arbitration provision.

ITTI disputes Fencourt's claim that it is taking inconsistent positions in the arbitration proceeding and before this Court.  According ITTI, it has always divided the matter at hand into two issues (first, whether the 1995 DA superceded any alleged indemnification agreement

between ITT Corp. and Fencourt, and second, whether such agreement existed in the first place) and taken the position that the first should be arbitrated, but the second litigated.  ITTI argues that it is Fencourt, not ITTI, who has been inconsistent.  According to ITTI, Fencourt was inconsistent when it proposed a settlement that all matters be arbitrated and when it filed the consent motion to stay proceedings for 90 days.

**IV.**   **Legal Standards**

    **A.**   **Arbitration in General**

"When an action involves 'an arbitration agreement connected to a transaction involving interstate commerce,' the courts must look at 'the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and the case law that has evolved thereunder.'"  Leslie-Huges v. American Express Financial Advisors, Inc., 2004 WL 1465669 (E.D. Pa. June 29, 2004) (quoting PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 510 (3d Cir. 1990) (overruled by implication on other grounds by Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002)).

Pursuant to the Federal Arbitration Act ("FAA"), if there is a valid agreement to arbitrate, there is a general presumption in favor of arbitration.  See AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986).  When one party seeks to force another to arbitrate, a district court should give the party opposing arbitration "the benefit of all reasonable doubts and inferences that may arise."  Par-Knit Mills, Inc. v. Storckbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980).  "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."  Id.  As becomes clear, the applicable standard is similar to that for summary judgment motions.  Id. at FN 9.  See also Technetronics,

Inc. v. Leybold-Geaeus GMBH, 1993 WL 197028 at *2 (E.D. Pa. June 9, 1993) ("Although styled as a motion to dismiss, in a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c).").

The Seventh Amendment to the United States Constitution expressly protects the right to a jury trial.  See Bouriez v. Carnegie Mellon University, 359 F.3d 292 (3d Cir. 2004).  Although the FAA "establishes a strong federal policy in favor of compelling arbitration over litigation," the Third Circuit general rule is that a party need not arbitrate unless it has agreed to such arbitration.  See Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999) ("Arbitration is strictly a matter of contract.  If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so.")

### B.    Arbitration in the Context of Parent / Subsidiary Issues

Several Third Circuit cases address the effect of the parent/subsidiary relationship and agency principles on agreements to arbitrate.  The leading case is E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 194 (3d Cir. 2001), cited by both parties although not for its discussion of agency.

Dupont involved an agreement between two subsidiaries of larger corporations.  The agreement contained an arbitration clause, but the respective parent companies were not signatories to the agreement.  The Third Circuit held that, Dupont, one of the parent companies, could not be compelled to arbitrate, principally because it was a non-signatory.  The Court explained that although "[t]raditional principles of agency law may bind a non-signatory to an arbitration agreement," Dupont, 269 F.3d at 198 (citing Thomson-CSF, S.A. v. American

-10-

Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995), the facts did not support a finding that

Dupont was an agent. Id. at 199 ("[A]ppellants seek to hold Dupont liable as a principal, not as

an agent; . . . Dupont could act on its own. . . .[the] attempt to bind Dupont on agency principles

fails.")  Nevertheless, the Court explained how an agent may bind its principal to an arbitration

agreement.

> One corporation–completely independent of a second corporation–may
> assume the role of the second corporation's agent in the course of one or more
> specific transactions.  This restricted agency relationship may develop whether the
> two separate corporations are parent and subsidiary or are completely unrelated
> outside the limited agency setting. . . [T]otal domination or general alter ego
> criteria need not be proven. . . . Liability may attach to the principal corporation
> even though it is not a party named in the agreement.

Id.  (citing Phoenix Canada Oil Co. v. Texaco, Inc., 842 F.2d 1455, 1477 (3d Cir. 1988)

(citations omitted)).

As this language makes clear, and as discussed above, the issue in Dupont involved

whether a subsidiary could bind its parent to arbitration.  The present case involves the reverse

question – whether a parent (i.e. a principal) can bind its subsidiary (i.e. its agent) to arbitration.

While the Third Circuit has not squarely addressed that question, several cases are instructive.

As a general matter, the Third Circuit has explained that "an agent can be bound by the terms of a

contract . . . if she is made a party to the contract by her principal acting on her behalf with

actual, implied, or apparent authority."  Bel-Ray, 181 F.3d at 445.[5]

_____

[5] Fencourt submitted to the Court, after the May 21, 2008 hearing, the Seventh Circuit
case of Zurich American Ins. Co. v. Watts Industries, Inc., 417 F.3d 682 (7th Cir. 2005) which
states that the pure existence of a parent / subsidiary relationship does not create a relationship of
agency.  In Zurich, the Seventh Circuit held that the district court had correctly found that the
relationship between the parent and the subsidiary at issue was, from a factual standpoint,
insufficient to bind the subsidiary to arbitration based on an agency or alter-ego theory.  As
discussed in detail infra, the undersigned finds that especially for purposes of executing the DA,

Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110 (3d Cir. 1993), not cited by the parties until post-hearing letters, is particularly instructive as to the present issue.  In Pritzer, trustees of a pension plan sued three related defendants for ERISA violations:  their brokerage firm, their asset manager, and their financial consultant.  The trustees and the brokerage firm had an agreement to arbitrate, but there was no such agreement between the trustees and the asset manager nor between the trustees and the financial consultant.  Nevertheless, the Third Circuit compelled arbitration of the trustee's claims against both non-signatories.

The financial consultant was an employee of the brokerage firm, and the Court found that the trustees's agreement to arbitrate with the firm covered disputes between the trustees and employees of the firm.  "Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."  Pritzer, 7 F.3d at 1121.

As for the asset manager, both it (a non-signatory) and the brokerage firm (a signatory) were wholly-owned subsidiaries of the same parent corporation.  The Court, again applying agency principles, found that the trustee's claims against the asset manager, a non-signatory, were nevertheless arbitrable because the two entities were subsidiaries of the same parent, and because the asset manager was "obligated to perform certain services" in connection with the agreement between the trustees and the brokerage firm.  Id. at 1122.  The Third Circuit also noted

_____

Fencourt was not an independent party.  Fencourt was an agent, first of ITT Corp. and then of ITT Hartford, and was made a party to the DA by ITT Corp. acting on its behalf.  See Bel-Ray, 181 F.3d at 445.

-12-

the possibility that the asset manager was an alter-ego of the brokerage firm.[6]

Although in Pritzer a non-signatory invoked the arbitration clause against a signatory, the Third Circuit has also enforced, pursuant to agency principles, an arbitral award against a non-signatory which did not participate in the arbitration proceedings adjudicating its interests.  See Isidor Paiewondsky Associates, Inc. v. Sharp Properties, Inc., 998 F.2d 145 (3d Cir. 1993).  Sharp Properties explained that arbitration agreements can be upheld against non-parties if the non-parties have related and congruent interests with the signatory.  Id. at 155.  See also, Pritzer, 7 F.3d at 1122 (relying, in part, on Sharp Properties).

**V.    Discussion**

This Court has concluded that settled legal principles applied to the facts require that Fencourt's claim be stayed pending completion of the arbitration which has already begun in New York before former Third Circuit Judge John Gibbons.  There are three principal reasons for this conclusion, and the Court will address each in turn.

**A.    The Plain Language of the Distribution Agreement and Agency Principles**

First, it is clear from the specific language of the DA that Fencourt, as a wholly owned subsidiary of ITT Corp. prior to the effective date of the DA, and a wholly owned subsidiary of ITT Hartford after the date of the DA, is bound by the terms of the DA.  The Court reaches this conclusion from an analysis of the language on pages 5-8 of the DA where, paragraph by paragraph, specific definitions and terms clearly establish that the DA governs the financial relationships between and among ITT Corp. and its wholly owned subsidiaries prior to the

_____

[6] For a discussion of Pritzer and Dupont as their rationales apply to jury waiver provisions, see Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 223-225 (3d Cir. 2007).

merger, and between and among the entities formed after the merger, including wholly owned

subsidiaries such as Fencourt.  At the hearing on May 21, 2008, both parties' counsel agreed that

the DA governs these financial relationships.

Fencourt's potential losses at the heart of this lawsuit, if realized, could qualify as "ITT

Hartford Liabilities" under the DA because "ITT Hartford Liabilities" include any of Fencourt's

liabilities.  DA at 6.  The DA's broad language is as follows:

> ITT Hartford Liabilities' shall mean, collectively, (i) all the liabilities of
> Hartford and its Subsidiaries under this Agreement and any of the Ancillary
> Agreements and (ii) all the Liabilities of the parties hereto or their respective
> Subsidiaries (whenever arising whether prior to, at or following the Effective
> Time) arising out of or in connection with or other wise relating to the
> management or conduct before or after the Effective Time of the ITT Hartford
> Business . . .

DA at 6.  Moreover, the DA defines "ITT Hartford Business" as the business of listed entities on

Schedule 1.01(c), which includes Fencourt.  DA at 1; DA Schedule 1.01(c).  "ITT Hartford

Assets" is also defined to include Fencourt's assets:

> ITT Hartford Assets' shall mean, collectively, all the rights and assets of ITT *and
> its Subsidiaries* relating to the ITT Hartford Business . . .

DA at 5 (emphasis added).  Thus under the terms of the DA, Fencourt liabilities qualify as ITT

Hartford liabilities; Fencourt assets qualify as ITT Hartford assets; and Fencourt business

qualifies as ITT Hartford business.

It is also important to note that the DA's stated purpose was to

> allocate and assign responsibility for those liabilities in respect of the activities of
> the businesses of [ITT Corp., ITT Hartford, and ITT Destinations] on the
> Distribution Date and those liabilities in respect of other businesses and activities
> of [ITT Corp.] *and its former subsidiaries* and other matters.

DA at 1 (emphasis added).  As noted above, prior to the execution of the DA, Fencourt was a

subsidiary of ITT Corp.

Given the DA's specific language, and because Fencourt, formerly a wholly owned subsidiary of ITT Corp., became a wholly owned subsidiary of ITT Hartford under the terms of the DA, the DA's arbitration clause covers a dispute between Fencourt and ITTI about the consequences of the DA.  The Court does not decide now whether the reinsurance obligations and the indemnification are covered by the terms of the DA itself but only that because Fencourt's financial responsibility vis-a-vis ITT Corp. and ITTI was within the terms of the DA, the arbitration clause of the DA is also applicable, and Fencourt must arbitrate the claims it now has against ITTI, which was formed pursuant to the DA, as was ITT Hartford.  Under standard principles of corporate law governing relationships between a corporation and its wholly-owned subsidiary, the fact that Fencourt did not sign the DA is of little weight.  Thus, the Court concludes that Fencourt is bound to the DA because it is a wholly owned subsidiary and an agent of the signatories.

The fact remains that Fencourt was not and is not an independent party and that its legal rights and obligations must be viewed through the entity which controls it.[7]  The agency theory, discussed in Pritzer and Dupont, is one of the recognized common-law principles for compelling a non-signatory to arbitrate.  See Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995) (setting forth five theories for binding non-signatories to arbitration

---

[7] The undersigned is reminded of the seminal Supreme Court decision of Cooperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984) where the Supreme Court reversed prior case law allowing the relationship between parents and their wholly-owned subsidiaries, to constitute a Sherman Act conspiracy.  "A parent and its wholly owned subsidiary have a complete unity of interest.  Their objectives are  common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one." Cooperweld, 467 U.S. at 771.

agreements).  See also Dupont, 269 F.3d at 195 (citing Thomson-CSF as authority on the common-law principles that can bind non-signatories to arbitration agreements).

The Court finds that agency principles apply in this case because Fencourt was under the control of ITT Corp. prior to the execution of the DA and under the control of ITT Hartford after the execution of the DA.  It is clear that ITT Corp. controlled Fencourt before the execution of the DA, because, inter alia, ITT Corp. had the power to "require" Fencourt to participate in a program such as the DCP, as Fencourt alleges.  It is apparent that ITT Hartford now exerts control over Fencourt because, among other reasons, the record before the Court contains several letters ITT Hartford wrote on Fencourt's behalf regarding the claims currently at issue.  One such letter, discussed below, even requests that ITT Hartford be indemnified for Fencourt's potential losses.  Furthermore, the plain language of the DA itself, discussed above, indicates that ITT Corp. and ITT Hartford had the ability to bind Fencourt to the terms of the DA.[8]  The Court therefore finds that Fencourt was the agent of ITT Corp. before the DA went into effect, and an agent of ITTI after the DA went into effect.

A closer examination of a recent letter in the record, dated January 28, 2005, from ITT Hartford to ITTI, is warranted.  In that letter ITT Hartford, acting on behalf of Fencourt, claims that the potential Fencourt losses which gave rise to this lawsuit constitute Indemnifiable Losses pursuant to the DA.[9]  See Def.'s Br. Ex. 6.  The letter states, "Such losses constitute Indemnifiable Losses pursuant to the Distribution Agreement, dated as of November 1, 1995, and

_____

[8] Indeed, at the May 21, 2008 hearing, counsel for Fencourt characterized Fencourt, when the DA was executed, as being "traded" from ITT Corp. to ITT Hartford and as "not part of the negotiation."  Transcript of hearing, May 21, 2008, p. 68.

[9] This letter is also relevant to the discussion of equitable estoppel, infra.

Hartford hereby seeks indemnification from ITT Industries, Inc. pursuant to Sections 3.01 and 3.05 of such Agreement." Id.  The Court finds it relevant to the matter of control that ITT Hartford requested that it itself, not Fencourt, be indemnified for the potential losses currently at issue.  Furthermore, this letter illustrates ITT Hartford's understanding that the DA governed Fencourt's potential reinsurance losses.

Given the record, the Court can not view Fencourt as an independent entity.  Agency principles, when viewed in the context of such correspondence and the plain language of the DA, bind Fencourt to the DA's arbitration clause.  ITT Corp., as Fencourt's parent prior to the execution of the DA, had the power to bind Fencourt to the DA, and indeed did so, rendering Fencourt's status as a non-signatory of little relevance.

Although Pritzker, discussed supra, addresses a somewhat different factual situation, the Court follows its reasoning.  Through principles of agency, Pritzker, found that a non-signatory subsidiary was bound to an arbitration agreement signed by its sister subsidiary, i.e. a subsidiary of the same parent corporation.  The Third Circuit based its ruling in part on the fact that the non-signatory subsidiary was compelled to perform certain services in connection with the agreement containing the arbitration clause.  Here, Fencourt was not an independent entity during the negotiation and execution of the DA and was compelled to adhere to the DA.  The DA was a sophisticated agreement effectuating a multi-billion dollar corporate reorganization that realigns Fencourt within the corporate structure, and it appears Fencourt was not a signatory simply because Fencourt's signature was unnecessary.  Fencourt must therefore be bound to the terms of the DA, including its arbitration clause.

## B.    Equitable Estoppel

The second reason for the Court's conclusion that Fencourt must arbitrate is equitable estoppel.  "[C]ourts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement."  Dupont, 269 F.3d at 199.  Thus, the doctrine of equitable estoppel "recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.  'To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.'"  Philadelphia Flyers, Inc. v. Trustmark Ins. Co., 2004 WL 1529167, at *4 (E.D. Pa. Jul. 6, 2004) (quoting International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000)).

The correspondence between and among the parties, both prior to and after the effective date of the DA, shows that Fencourt, although a non-signatory to the DA, nonetheless took advantage of certain provisions of the agreement and cannot now disclaim an obligation to arbitrate when the duty to arbitrate is set forth in the very agreement on which Fencourt previously relied.  As discussed above, in a letter dated January 28, 2005, ITT Hartford, on behalf of Fencourt, gave notice to ITTI that Fencourt might incur the losses that gave rise to this lawsuit, and invoked the DA's indemnification provisions to give notice of its intent to request indemnification from ITTI.  Def.'s Br. Ex. 6.  ITT Hartford, on Fencourt's behalf, clearly relies on the DA to Fencourt's benefit in this letter.

In a subsequent letter dated April 11, 2005, from ITT Hartford to ITTI, ITT Hartford again invokes the benefit of the DA on behalf of Fencourt.  See Def.'s Br. Ex. 7.  Similarly to the previous letter, this letter also refers to the losses presently at issue in this case as indemnifiable losses under the DA.  The letter further invokes the DA to describe the relative responsibilities of ITTI and Fencourt.  "Under the Distribution Agreement, ITTI retains responsibility for the primary insurance agreements with ACE, including all premium obligations, and Fencourt retains responsibility for administration of the reinsurance agreements with ACE."  See Def.'s Br. Ex. 7.  Via this language, ITT Hartford, on behalf of Fencourt, again invokes the provisions of the DA to Fencourt's benefit.

It is the basic premise of equitable estoppel, as discussed above, that a party may not invoke certain provisions of an agreement and later argue that other provisions of the same agreement do not apply.  Here Fencourt (or ITT Hartford acting on its behalf) has relied on the DA, including the DA's indemnification provisions, and now seeks to preclude the application of the DA's arbitration clause.  Under the doctrine of equitable estoppel, "a non-signatory should not be permitted to embrace a contract for some purposes and then disclaim that same contract's unfavorable terms."  Amkor Technology, Inc. v. Alcatel Business Systems, 278 F. Supp. 2d 519, 521 (E.D. Pa. 2003).

The Court is not persuaded by Fencourt's argument that it did not receive a "direct benefit" from the DA and thus equitable estoppel can not apply.  A party is indeed estopped when it has received a "direct benefit" from the agreement containing the arbitration clause.  Amkor, 278 F. Supp. 2d at 522.  However, there is little, if any, support for Fencourt's narrow interpretation of "direct benefit".  At the very least, the promissory notes that Fencourt received

-19-

in connection with the DA (See Def.'s Br. Exh. 2) constitute a "direct benefit" to Fencourt

regardless of whether they were intended to cover Fencourt's future reinsurance obligations.

Each promissory note itself states that it constitutes "a Conveyancing and Assumption Instrument

within the meaning of the Distribution Agreement dated as of November 1, 1995, among ITT

Corporation, ITT Destinations and ITT Hartford Group, Inc.."  Def.'s Br. Ex. 2.  Furthermore the

parties agree that Fencourt received the notes "in connection with the corporate reorganization".

See Joint Stmt. of Undisputed Facts at ¶¶ 16-17 (Doc. No. 36).  Because the DA applies to

Fencourt and because Fencourt has relied on and benefitted from the DA, Fencourt is estopped

from claiming that the DA's arbitration clause does not apply.

### C.      Third-Party Beneficiary

The third reason for the Court's conclusion is ITTI's third-party beneficiary argument,

which contends that Fencourt, although not a signatory to the DA, was an intended third-party

beneficiary of the agreement.  Under the third-party beneficiary doctrine, a non-signatory third-

party beneficiary of a particular agreement may be bound by that agreement's arbitration clause

"where its claim arises out of the underlying contract to which it was an intended third-party

beneficiary."  Dupont, 269 F.3d at 195.  See also Flexi-Van Leasing, Inc. v. Through Transport

Mut. Ins. Ass'n Ltd., 108 Fed. Appx. 35, 40 (3d Cir. 2004).

Under Pennsylvania law, a party is an intended third-party beneficiary if "both parties to

the contract express an intention to benefit the third party in the contract itself," or if "recognition

of a right to performance in the beneficiary is appropriate to effectuate the intentions of the

parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the

benefit of the promised performance."  Stone v. Pennsylvnania Merchant Group, LTD., 949 F.

Supp. 316, 321 (E.D. Pa. 1966) (quoting Scarpitti v. Weborg, 609 A.2d 147, 150 (1992) and the Restatement (Second) of Contracts § 302(1)(b) (1979), which had been adopted as the law of Pennsylvania).  Here, the express terms of the DA indicate that Fencourt was among the third-party beneficiaries of the DA.  The DA's indemnification provisions, §§ 3.01 - 3.08 at DA 21-28, provide that ITTI and ITT Destinations indemnify Fencourt,[10] and set forth the procedures for such indemnification.  These provisions, while not the only indicators of Fencourt's status as a third-party beneficiary, clearly confer third-party beneficiary status on Fencourt.

However, for the third-party beneficiary doctrine to apply, Fencourt must also be asserting claims that "arise out of" its status as a third party beneficiary of the DA.  Fencourt contends that its claims do not "arise out of" its third-party beneficiary status because it is not suing under the DA but under an indemnification agreement that predates the DA.  As noted above, the parties agreed, at the May 21, 2008 hearing, that the DA governed their financial relationship.  Whether an indemnification agreement that predates the DA exists, is valid, and requires ITTI to indemnify Fencourt for its reinsurance obligations must therefore be viewed through the lens of the DA.  As a result, Fencourt's claim, which necessarily affects the financial relationship between the parties, must "arise out of" the DA.

## VIII.   Conclusion

For the reasons stated above, the Court will stay the case pending the resolution of the arbitration proceedings between Fencourt and ITTI in New York.  The Court will deny ITTI's

---

[10] Specifically Section 3.01 provides that ITTI indemnifies ITT Hartford Indemnities and Section 3.02 provides that ITT Destinations indemnifies ITT Hartford Indemnities.  ITT Hartford Indemnities are defined as "ITT Hartford, each affiliate of ITT Hartford, each of their respective directors, officers, employees and agents and each of the heirs, executors, successors and assigns of any of the foregoing."  DA at 6.

Motion to Dismiss for lack of jurisdiction and merely concludes that Fencourt must arbitrate the

claims it now has against ITTI.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


FENCOURT REINSURANCE COMPANY, LTD.      :       CIVIL ACTION
      v.                                 :
                                     :
ITT INDUSTRIES, INC.                        :       NO. 06-4786

## <u>ORDER</u>

And NOW, this  20th     day of June, 2008, it is hereby ORDERED that Defendant's

Motion to Dismiss the Complaint (Doc. No. 6) is DENIED but the Court will Order a Stay

Pending Arbitration.  The Clerk of the Court shall place the case in suspense.

                                   BY THE COURT:


                                     <u>  /s/ Michael M. Baylson    </u>
                                     Michael M. Baylson, U.S.D.J.


A:\06-4786 Fencourt v. ITT - Memo re Arb.rev. 6.20.wpd